**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

**SHEILA Y. FREEMAN,**

      **Plaintiff,**

**v.**                                   **Case No. 04-C-803**

**SARA LEE CORPORATION,**

      **Defendant.**

## DECISION AND ORDER

The plaintiff, Sheila Y. Freeman ("Freeman"), filed a complaint alleging that Sara Lee Corporation ("Sara Lee") discriminated against her on the basis of her race in violation of Title VII of the Civil Rights Act of 1964. Sara Lee filed a motion for summary judgment, which is now pending before this Court.

### DISCUSSION

Freeman worked in the position of a "shaker" for Sara Lee. (Defendant's Proposed Findings of Fact ("DPFOF") ¶ 2.) As a shaker, Freeman was responsible for sorting buns as they came off a conveyer belt to ensure that they went though the machines evenly. (*Id.* at ¶ 3.)

On January 24, 2004, Freeman was working in a production shift as a bun operator on a machine operated by another employee named Amed. (*Id.* at ¶ 11.) Robert Quick

1

("Quick") was sorting buns on a separate machine operated by an employee named Amira. (*Id*. at ¶ 12.) At some point during the shift, Amira told the supervisor, Joe Paul ("Paul"), that Quick, who was a new employee, was not able to keep up the pace of bun sorting on her machine. (*Id*. at ¶ 13.) Because increasing the speed of Freeman's machine would reduce the volume of buns being sorted by Quick, Amira asked Paul to increase the speed of Freeman's machine. (*Id*. at ¶¶ 13-14). Paul consented to Amira's request, and turned up the speed of Freeman's machine. (*Id*. at ¶ 15.)

Freeman objected to Paul's decision to increase the speed of her machine, and an argument ensued in which she called Amira a "bitch." (*Id*. at ¶ 16.) Paul told Freeman that he would not tolerate her profanity, and Freeman responded by telling him to "shut up." (*Id*. at ¶¶ 17-18.) Paul and Freeman then engaged in an argument, in which Freeman told Paul that he "didn't know what the fuck he was doing," and "to get the fuck out of my face." (*Id*. at ¶ 19.) Freeman, during her argument, also was not allowing any bread to go through her machine and was instead throwing it all in the garbage. (*Id*. at ¶ 21.) Moreover, according to Freeman, because Quick was watching the argument between Freeman and Paul, Quick "probably" failed to remove defective products. (*Id*. at ¶ 23.) Ultimately, Paul instructed Freeman to go home, and Freeman complied and immediately left the premise. (*Id*. at ¶¶ 24-25.)

Freeman and Paul later met with Paul's supervisor, a human resources employee, the plant manager, and Freeman's union representative to discuss the January 24, 2004 incident.

2

(*Id*. at ¶¶ 26-27.) Freeman admitted to directing profanities to Paul and apologized. (*Id*. at ¶¶ 28-30.) Following the meeting, a decision was made to terminate Freeman's employment. (*Id*. at ¶ 31.)

Freeman alleges that on another occasion, Quick, who is a white male, made an inappropriate comment to Paul as well. (*Id*. at ¶ 40.) She claims that, while in the break room, Quick told Paul that if another supervisor, Joe Williams, did not correct an error with Quick's paycheck, that he was going to "bring his gun up here and blow [Williams's] fucking brains out." (*Id*.) Quick received a three-day suspension for his comment. (*Id*.)

Freeman then filed this lawsuit, alleging that her termination was a result of racial discrimination.

**STANDARD OF REVIEW**

A court will grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A "material fact" is one which, under the relevant substantive law, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact exists if a reasonable juror could find that the evidence supports a verdict for the nonmoving party. *Id*.

3

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. When considering the movant's case, the Court should take all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Hall v. Bennett*, 379 F.3d 462, 465 (7th Cir. 2004). If the movant meets his burden (by showing an absence of a genuine issue of material fact), the nonmovant may not rest on the pleadings. Instead, the nonmovant must come forward with evidence that there is a genuine issue for trial that would support a reasonable jury verdict on every issue for which he bears the burden of proof at trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *Celotex Corp.*, 477 U.S. at 322-24. If the nonmoving party bears the burden of proof on a matter at trial, and he is unable "to establish the existence of an element essential to [his] case," summary judgment is appropriate. *Celotex*, 477 U.S. at 322-23.

## DISCUSSION

Freeman attempts to establish her prima facie case through the indirect method of proving unlawful discrimination. Using this method, Freeman must establish that (1) she belongs to a protected class; (2) she performed her job satisfactorily; (3) she suffered a materially adverse employment action; and (4) her employer treated similarly situated employees outside the protected class more favorably. *See Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 861 (7th Cir. 2005). If Freeman establishes her prima facie case,

4

Sara Lee may avoid liability by producing a legitimate, nondiscriminatory reason for Freeman's termination. *See Wade v. Lerner New York, Inc.*, 243 F.3d 319, 323 (7th Cir. 2001). Freeman then would have the burden to rebut Sara Lee's nondiscriminatory reason by presenting evidence that would enable the trier of fact to determine that Sara Lee's reason was pretextual. *Id*.

Freeman fails to establish her prima facie case because she does not present evidence that shows that Sara Lee treated similarly situated employees that were not African American more favorably. In order for conduct to be "similarly situated," Freeman must show that another employee outside of her protected class "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-618 (7th Cir. 2000). Freeman claims that Quick's comment to Paul in the break room in which Quick threatened another supervisor is sufficiently similar to Freeman's conduct. The Court disagrees. There are clearly "differentiating and mitigating circumstances" that distinguish the two instances. Freeman engaged in a verbal altercation involving profanities with both a supervisor and another employee on the factory floor during one of her shifts, whereas Quick made his comment to one supervisor in the break room about another supervisor that was not even present. Moreover, Freeman's conduct had an immediate impact on the productivity of the plant. She admits that she threw away good products during the argument, and further concedes that another employee likely allowed defective products to

5

pass through the machine as a result of the scene she created. There is no evidence, on the other hand, that Quick's statement resulted in any delays or a loss of productivity. Quick's conduct was not "similarly situated" to Freeman's conduct, so Freeman failed to meet the fourth element of her prima facie case.

Even if the Court were to accept Quick's conduct as indistinguishable from Freeman's conduct, Sara Lee offers a legitimate, nondiscriminatory reason for terminating Freeman, namely, her verbal abuse towards a supervisor and another employee on the factory floor during her shift. Freeman contends, though, that Sara Lee's reason is a pretext for racial discrimination because Sara Lee does not have an official rule that prohibits cussing.

Freeman's argument is unavailing. The handbook that Freeman signed when she commenced her employment states that Sara Lee prohibits "disorderly and immoral conduct on company property and during the course of employment." (Castleberry Aff. ¶ 2, Ex. A.) Freeman's altercation on the factory floor clearly was "disorderly" and is a legitimate, nondiscriminatory reason to terminate her. There is no evidence that Sara Lee is using that reason as a pretext to discriminate against Freeman on the basis of her race.

6

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

Sara Lee's Motion for Summary Judgment (Docket No. 57) is **GRANTED**.

The clerk is directed to enter judgment and close this case accordingly.

Dated at Milwaukee, Wisconsin this 12th day of September, 2006.

> **BY THE COURT**
>
> s/ Rudolph T. Randa
> **Hon. Rudolph T. Randa**
> **Chief Judge**